**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN MCDANIEL,<br><br>           Plaintiff,<br><br>    v.<br><br>SCIENCE 37 HOLDINGS, INC., DAVID COMAN, ROBERT FAULKNER, BHOOSHITHA B. DE SILVA, JOHN W. HUBBARD, EMILY ROLLINS, NEIL TIWARI, and PAUL VON AUTENRIED,<br><br>           Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John McDaniel ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Science 37 Holdings, Inc. ("Science 37" or the "Company") and the members of Science 37's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the Board's attempt to sell Science 37 to eMed, LLC ("eMed") (the "Proposed Transaction").

2. On January 28, 2024, Science 37 entered into an Agreement and Plan of Merger ("Merger Agreement") with eMed and eMed's wholly owned subsidiary, Marlin Merger Sub Corporation ("Purchaser"). Pursuant to the terms of the Merger Agreement, eMed will acquire Science 37 in exchange for $5.75 in cash, via a tender offer (the "Tender Offer"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on February 12, 2024.

3. On February 12, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. Specifically, the Recommendation Statement, which recommends that Science 37 stockholders tender their shares in the Tender Offer, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, William Blair & Company, L.L.C. ("William Blair"); (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by William Blair and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Science 37 stockholders need such information in order to make a fully informed decision in connection with the Tender Offer.

5. The Tender Offer is currently scheduled to expire at 12:00 Midnight, New York City time, at the end of the day of Monday, March 11, 2024. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Science 37's other shareholders to make an informed decision whether to tender their shares in the Tender Offer. Therefore, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Science 37's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of Science 37 common stock.

10. Defendant Science 37 is a Delaware corporation, with its principal executive offices located at 800 Park Offices Drive, Suite 3606, Research Triangle Park, North Carolina 27709. Science 37's shares trade on the Nasdaq Capital Market under the ticker symbol "SNCE."

11. Defendant David Coman has been Chief Executive Officer and a director of the Company at all relevant times.

12. Defendant Robert Faulkner has been Chairman of the Board and a director of the Company at all relevant times.

13. Defendant Booshitha B. De Silva has been a director of the Company at all relevant times.

14. Defendant John W. Hubbard has been a director of the Company at all relevant times.

15. Defendant Emily Rollins has been a director of the Company at all relevant times.

16. Defendant Neil Tiwari has been a director of the Company at all relevant times.

17. Defendant Paul von Autenried has been a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. Science 37 is a leader in patient-centric clinical trials, providing customers with a platform to empower clinical research while optimizing the experience and outcomes for patients and researchers. Through the Company's Metasite offerings, Science 37 reaches an expanded population beyond the traditional site, delivering on its goal of clinical research that works for everyone. Patients gain the flexibility to participate from the comfort of their own homes, at their local community provider, or at a traditional site when needed. The Company's Metasite platform is powered by a proprietary technology platform with in-house medical and operational experts that drive uniform study orchestration, enabling greater compliance and high-quality data.

### The Proposed Transaction

20. On January 29, 2024, Science 37 announced that it had entered into the Proposed Transaction, stating, in relevant part:

4

**Research Triangle Park, NC –** January 29, 2024 – Science 37 Holdings, Inc. (Nasdaq: SNCE) (the "Company" or "Science 37"), the clinical research industry's leading Metasite$^{TM}$, today announced that it has entered into a definitive merger agreement to be acquired by eMed, LLC ("eMed"), the leader in on-demand virtual care and treatment for consumers. With the most authoritative in-home testing and treatment solution available across a variety of indications, the largest real-time network of certified remote proctors, and Test-to-Treat$^{TM}$ technology that streamlines the patient enrollment process, eMed brings significant resources to enhance Science 37's ability to access unique patients, enroll studies faster, and ensure long-term sustainability.

The transaction, which has been unanimously approved by Science 37 Board of Directors, is valued at an equity value of approximately $38 million and will be structured as an all-cash tender offer to acquire all outstanding shares of Science 37. Under the terms of the agreement, eMed, through its wholly owned subsidiary, will commence a tender offer to acquire all outstanding shares of Science 37 common stock for $5.75 in cash per share, representing a premium of approximately 21.3% over Science 37's closing share price on the 26th of January, 2024, the last full trading day prior to the transaction announcement. In connection with the transaction, Stockholders collectively holding approximately 44% of the outstanding shares of common stock have entered into Tender and Support Agreements pursuant to which such stockholders have agreed, among other things, to tender all of their shares of the company in response to the tender offer and otherwise support the transaction, subject to certain exceptions and customary terms and conditions set forth therein.

"After an extensive review of opportunities available to Science 37, we believe that eMed provides the greatest value to our stockholders, customers, patients, and employees" said David Coman, Chief Executive Officer at Science 37. "Stockholders will receive a premium, trial sponsors will gain greater access to patients, faster enrollment, and confidence in the Company's capital position, and our employees will be able to continue to pursue the existing mission of the Company."

The transaction is subject to the tender of a majority of Science 37's outstanding shares of common stock, and other customary closing conditions. Upon completion of the transaction, Science 37 will become a privately held company and shares of Science 37 common stock will no longer be listed on any public market. The parties anticipate that the transaction will be completed in the first quarter of 2024.

William Blair & Company, L.L.C. is serving as exclusive financial advisor to Science 37, and Thompson Hine LLP is serving as legal advisor. Hogan Lovells US LLP is serving as legal advisor to eMed.

**The Materially Incomplete and Misleading Recommendation Statement**

21.     On February 12, 2024, the Board caused to be filed a materially incomplete and misleading Recommendation Statement with the SEC. The Recommendation Statement, which recommends that Science 37 stockholders tender their shares in the Tender Offer, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by William Blair; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest faced by William Blair and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for the Company*

22.     The Recommendation Statement fails to disclose material information concerning Company management's financial projections for Science 37.

23.     Critically, the Recommendation Statement fails to disclose the unlevered free cash flows that the Company was forecasted to generate for the fiscal years ending December 31, 2024 through December 31, 2028, relied upon by the Board's financial advisor William Blair in connection with its *Discounted Cash Flow Analysis*. A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1] The unlevered free cash flows formed the basis of the *Discounted Cash Flow Analysis* of Science 37 that William Blair performed in connection with its fairness

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the discounted cash flow analysis method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow analysis method to be the preeminent method of valuation).

opinion. *See* Recommendation Statement at 41 ("William Blair utilized the January 2024 Projections to perform a discounted cash flow analysis of Science 37's projected future free cash flows for the fiscal years ending December 31, 2024 through December 31, 2028").

24. The Recommendation Statement includes a summary of certain of Science 37 management's financial projections for fiscal years 2024 through 2028. *See id.* at 36. Yet, this summary fails to include the most important projections – the Company's unlevered free cash flows. The Recommendation Statement further fails to disclose how the unlevered free cash flows were calculated and the underlying line items. The omission of the unlevered free cash flows and underlying line items renders the projections on page 36 and the summary of William Blair's *Discounted Cash Flow Analysis* of Science 37 set forth on page 41 of the Recommendation Statement incomplete and misleading, because the Recommendation Statement provides a materially incomplete and misleading valuation picture of the Company.

25. In addition, for each of the Company's "November 2023 Projections," "December 2023 Projections," and "January 2024 Projections", the Recommendation Statement fails to disclose all line items underlying the calculation of the Company's: (i) Adjusted Gross Profit; and (ii) Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning William Blair's Financial Analyses*

26. The Recommendation Statement also fails to disclose material information concerning William Blair's financial analyses.

27. With respect to William Blair's *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used in the analysis, the Recommendation Statement fails to disclose a

7

quantification of: (i) calendar year 2028 expected revenue;[2] (ii) the terminal values for the Company; (iii) the inputs and assumptions underlying the discount rates ranging from 22.0% to 24.0%; (iv) the Company's net cash as of December 31, 2023; and (v) the Company's fully diluted outstanding shares used in the analysis.

28. With respect to William Blair's *M&A Premiums Paid Analysis*, the Recommendation Statement fails to disclose: (i) the identities of the transactions; and (ii) the individual premia observed for each transaction.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

29. The Recommendation Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

30. Specifically, the Recommendation Statement fails to disclose whether the standstill provisions in the nondisclosure agreements Science 37 executed with parties identified in the Recommendation Statement as "Party A," "Party B," "Party C," "Party D," "Party E," "Party F," "Party G," and "Party H" are "don't-ask, don't-waive" standstill provisions that are still in effect and operate to preclude any of these parties from submitting a topping bid for the Company.

*Material Misrepresentations and/or Omissions Concerning William Blair's and Company Insiders' Potential Conflicts of Interest*

31. The Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by William Blair.

32. Specifically, the Recommendation Statement fails to disclose the details of any services William Blair has performed for Science 37, eMed or any of their respective affiliates in

---

[2] The projections set forth on page 36 of the Recommendation Statement include financial projections for *fiscal year* 2028. *See id.* ("Science 37 updated its fiscal year 2024 preliminary budget, as well as the projections for fiscal years 2025 through 2028 (such modified projections, 'January 2024 Projections')").

the two years prior to rendering its fairness opinion, as well as the amount of any compensation received in connection with such services.

33. The Recommendation Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

34. The Recommendation Statement fails to disclose whether any of eMed's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.  The Recommendation Statement also fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Science 37 directors and executive officers and eMed, who participated in all such communications, when they occurred and their content.

35. In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Information," "Opinion of William Blair & Company, L.L.C.," "Background of the Offer and the Merger," and "Future Arrangements" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Science 37 will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(d) of the
Exchange Act and SEC Rule 14d-9 Promulgated Thereunder**

36. Plaintiff repeats all previous allegations as if set forth in full.

37.  Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Science 37 stockholders to tender their shares in the Tender Offer.

38.  Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

39.  Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

40.  SEC Rule 14d-9 sets forth, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

41.  Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

42.  The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

43.  Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation

Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

44. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Science 37, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

47. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement to Science 37 stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. Specifically, the Recommendation Statement misrepresented and/or omitted material facts concerning the Company's financial projections, William Blair's financial analyses, the background of the Proposed Transaction, and William Blair's and Company insiders' potential conflicts of interest.

11

48. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

49. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

### COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Science 37 within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Science 37, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

54. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Science 37 stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Science 37, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in Science 37 with them from proceeding with, consummating, or closing the Proposed Transaction,

including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 14, 2024                                           **ACOCELLI LAW, PLLC**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*